UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-62879-RAR

**DAVID BLOOMGARDEN**, on behalf of
himself and all others similarly situated,

    Plaintiff,

v.

**ALLSTATE FIRE & CASUALTY
INSURANCE COMPANY**,

    Defendant.
_____/

## ORDER GRANTING MOTION TO REMAND

"When the delegates to the Constitutional Convention gathered in the summer of 1787, the extent of federal-court jurisdiction formed a focal point of their discussions." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020). Ultimately, at the behest of James Madison, the "judicial power" bestowed upon federal courts under Article III of the United States Constitution was limited to resolve only "Cases" or "Controversies." *Id.* (citing U.S. Const. art. III §§ 1-2).[1] "As a result, federal courts may exercise their power only 'for the determination of real, earnest, and vital controversy between individuals.'" *Id.* (quoting *Chi. & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892)). Indeed, "'[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). It is this "case-or-controversy requirement, embodied in the doctrine of standing,

---

[1] *See also* James Leonard & Joanne C. Brant, *The Half-Open Door: Article III, The Injury-In-Fact Rule, and the Framers' Plan for Federal Courts of Limited Jurisdiction*, 54 RUTGERS L. REV. 1 (2001) ("A review of the historical materials surrounding the adoption of the Constitution such as the records of the 1787 Convention and the ratification debates has convinced us that the Framers most likely viewed the courts as places where individual litigants came to have actual and personal grievances resolved. Equally important, the injury-in-fact rule is necessary to keep the balance that the Framers intended among the branches of government.").

[that] 'confines the federal courts to a properly judicial role.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)); *see also United States v. Richardson*, 418 U.S. 166, 188 (1974) (Powell, J., concurring) ("Relaxation of standing requirements is directly related to the expansion of judicial power.").

Acknowledging this jurisdictional limitation, Plaintiff David Bloomgarden ("Bloomgarden") filed a Motion to Remand this matter on September 14, 2020 ("Motion"), given a purported lack of subject matter jurisdiction. [ECF No. 109]. Defendant, Allstate Fire & Casualty Insurance Company ("Allstate"), filed a response in opposition to the Motion on September 25, 2020 ("Response") [ECF No. 110], and Plaintiff filed a reply in support of their Motion on September 30, 2020 ("Reply") [ECF No. 111]. The Court, having reviewed the Motion, Response, and Reply, as well as the record, and being otherwise fully advised in the premises, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Remand for lack of standing is **GRANTED** for the reasons set forth herein.

## BACKGROUND

This matter involves a single-count complaint for breach of contract brought by Bloomgarden—individually and on behalf of all those similarly situated—based on Allstate's purported failure to compensate him for the salvage value of his insured automobile. *See* Complaint [ECF No. 1-2] ¶¶ 61–67. Bloomgarden was involved in an accident that resulted in damage to his vehicle and he submitted a claim under his Allstate insurance policy ("Policy"). *Id.* ¶¶ 41–46. Allstate declared Bloomgarden's vehicle to be a total loss and agreed to pay Bloomgarden the Actual Cash Value ("ACV") of his vehicle pursuant to the Policy. *Id.*

However, Allstate conditioned the receipt of ACV on Bloomgarden transferring title and ownership of his damaged vehicle to Allstate. *Id.* Bloomgarden agreed, transferred title and

ownership to Allstate in exchange for ACV, and Allstate later sold the vehicle for salvage value "which was never disclosed or paid to Plaintiff." Compl. ¶ 46. Bloomgarden maintains that by conditioning his receipt of ACV on the transfer of ownership of his insured vehicle, Allstate breached its Policy by failing to compensate Bloomgarden—and his fellow class members—for the post-loss salvage value of their vehicles. *Id.* ¶¶ 27–40.

The Complaint was initially filed in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. Allstate removed the action to this Court on November 20, 2019. Notice of Removal [ECF No. 1]. After denying Allstate's Motion to Dismiss [ECF No. 39], the Court entered an Amended Scheduling Order [ECF No. 55] requiring the parties to conduct limited discovery on the interpretation of Allstate's Policy as to salvage value—and setting a briefing schedule for the parties' cross-motions for summary judgment on this issue. Shortly after the parties fully briefed the issue, Bloomgarden filed the instant Motion [ECF No. 109] requesting that the Court remand this proceeding back to state court for lack of subject matter jurisdiction.

## **LEGAL STANDARD**

A defendant is permitted to remove a case from state court to federal court if the case could have been brought in federal court in the first instance. 28 U.S.C. § 1441. This includes actions where the federal court has diversity jurisdiction under 28 U.S.C. § 1332, which requires complete diversity of citizenship between the plaintiff and all defendants and an amount in controversy exceeding $75,000. On a motion to remand, the removing party shoulders the burden of establishing federal subject-matter jurisdiction. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447. "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to

construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Id.*

Here, this case arrived in federal court via removal on the basis of diversity jurisdiction under § 1332. But that is not the end of the inquiry. Plaintiff must also have standing to bring his claim. *See Lujan v. Def.'s of Wildlife*, 504 U.S. 555, 560 (1992). And "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* at 560. Thus, standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Sedlin*, 422 U.S. 490, 498 (1975). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims." *Bochese v. Town on Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005); *see also Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019) ("One essential component of the 'case or controversy' requirement is that the plaintiff must have standing to pursue his claim in a federal court. Indeed, standing is a threshold question that must be explored at the outset of any case. In its absence, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claim.") (internal citations and quotations omitted).

To establish standing, Plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1547; *see also Lujan*, 504 U.S. at 560 (describing these three elements as the standing inquiry's "irreducible constitutional minimum"). Proving an "injury in fact" is "[f]irst and foremost" among these three elements. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). To establish an injury in fact, a plaintiff must show, not only "an invasion of a legally protected interest," but also a "concrete and particularized" injury that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 540

U.S. at 560. "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. In other words, the injury must be "real," not "abstract," *id.*, and a "plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it." *Muransky v. Godiva Chocolatier, Inc.*, Nos. 16-16486 & 16-16783, 2020 WL 6305084, at *4 (11th Cir. Oct. 28, 2020).

Lastly, "when standing is raised at the summary judgment stage, the plaintiff can no longer rest on mere allegations." *Bischoff v. Osceola Cty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000). Rather, the "burden of establishing the[] elements of standing continues—and, in fact, increases—all the way through the litigation." *Muransky*, 2020 WL 6305084 at *5 n.1 (citing *Lujan*, 504 U.S. at 561). Thus, a plaintiff must "set forth by affidavit or other evidence specific facts . . . which for purposes of the summary judgment motion will be taken as true." *Bischoff*, 222 F.3d at 878 (internal quotations and citations omitted); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-412 (2013) (same). In deciding standing questions at summary judgment, the district court may "not make credibility determinations based solely on the contents of a plainly conflicting paper record," *id.* at 876, and must construe "all disputed facts . . . in the light most favorable to the plaintiff," *id.* at 878 (quoting *Haase v. Sessions*, 835 F.2d 902, 904 (D.C. Cir. 1987)).[2]

---

[2] It is worth noting the procedural history underlying this Court's current analysis of Article III standing. "[A] defendant's challenge to a plaintiff's standing can take two forms: a motion to dismiss, which is based exclusively on plaintiff's pleadings, and a motion for summary judgment, in which evidence, not pleadings, pertinent to standing are evaluated by the district court. In both instances, disputed facts must be construed in the light most favorable to plaintiff. In addition to these two party-initiated motions, the court on its own initiative may undertake evidentiary hearings, even in the context of a motion to dismiss." *Bischoff*, 222 F.3d at 878 (quoting *Haase*, 835 F.2d at 904). Here, standing was not raised by Allstate in their Motion to Dismiss, *see* [ECF No. 10], nor has standing been raised by either party in their respective motions for summary judgment. *See* [ECF Nos. 70, 74]. Bloomgarden has now opted to raise standing by way of a Motion to Remand. Thus, given that this case is at the summary judgment stage, the Court can avail itself of the parties' undisputed material facts in support of their cross-motions for summary judgment. *See* Defendant's Statement of Material Facts in Support of Motion for Summary Judgment [ECF No. 71] ("Allstate SMF"); Plaintiff's Statement of Material Facts in Support of Partial Motion Summary Judgment [ECF No. 75] ("Bloomgarden SMF").

## ANALYSIS

In seeking remand, Bloomgarden urges this Court to adopt the rationale set forth by Judge William Dimitrouleas in his Order on Motion for Summary Judgment in *Morgan v. Progressive Select Ins. Co.*, Case No. 18-CV-61844-WPD ("Morgan Order"). [*Morgan* ECF No. 196].[3] In *Morgan*, Judge Dimitrouleas analyzed an insurance policy provision identical to the one at issue here. The plaintiff in *Morgan*, like Bloomgarden, was involved in a car accident and Progressive Select Insurance Company ("Progressive") determined that the vehicle was a total loss. *Morgan* Order at 2. Like Allstate, Progressive offered to pay the plaintiff ACV pursuant to the insurance policy at issue—provided that plaintiff opted to transfer title of the vehicle to Progressive. *Id.* The plaintiff in *Morgan* opted to transfer title, received ACV for his vehicle, and Progressive sold the vehicle for salvage value. *Id.* And like Bloomgarden, the plaintiff in *Morgan* filed a single count complaint alleging that "Defendant breached the Policy by requiring transfer of the damaged vehicle to the Defendant or its affiliate as an added condition in order to obtain the actual cash value payment required under the Policy." *Id.* (internal quotations and citation omitted).

Progressive moved to dismiss for lack of subject-matter jurisdiction or, alternatively, for summary judgment ("Progressive Motion"), arguing that plaintiff lacked standing because he could not demonstrate a cognizable injury. [*Morgan* ECF No. 157]. Specifically, Progressive noted that plaintiff was made whole when Progressive paid him ACV for the total loss of his vehicle. Progressive Motion at 1-2 (noting plaintiff's claim is that Progressive "should have compensated [plaintiff] twice for their total vehicle . . . [plaintiff was] not injured, in any sense of the word" when Progressive "did not pay . . . a windfall that [plaintiff] did not even bargain for."). Judge Dimitrouleas agreed, finding that plaintiff "failed to demonstrate that he experienced a

---

[3] The Court will identify filings in the *Morgan* action to avoid confusion with the instant case.

concrete and particularized injury . . . [and thus] lacks standing to bring his claim." *Morgan* Order at 6. Progressive paid plaintiff the actual cash value of the covered vehicle under its insurance policy; moreover, plaintiff "failed to demonstrate that the contract entitles it to effectively recover twice any value the vehicle retained after the loss through both retention of the salvage vehicle and the actual cash value of the vehicle." *Id.*

Bloomgarden is faced with the exact same problem in this case. Thus, the analysis set forth by Judge Dimitrouleas in *Morgan* is equally applicable here. Bloomgarden contends that "there is simply no clear and unambiguous provision in the Policy that permits Defendant to require transfer of title to Defendant as a condition of insureds' total loss settlements for actual cash value and permits Defendant to obtain permanent ownership of insured vehicles without compensation to insureds for the values of those vehicles as salvage." Compl. ¶ 35. But it is undisputed that the Policy's Limit of Liability provision, amended by Florida Amendatory Endorsement – AFA61-3, provides that Allstate's "limit of liability is the least of . . . the actual cash value of the property at the time of the loss, which may include a deduction for depreciation[.]" Policy at 40 [ECF No. 75-1]; *see also* Bloomgarden SMF ¶ 23; Allstate SMF ¶ 4.

This Limit of Liability provision unequivocally "places a ceiling" on Allstate's payment obligation by contractually obligating Allstate to only pay ACV. *See Sigler v. GEICO Cas. Co.*, 967 F.3d 658 (7th Cir. 2020) (affirming dismissal where insured maintained he was entitled to additional vehicle-replacement costs because policy limited liability to "actual cash value at the time of loss" which is "the most" the insurer is obligated to pay in the event of a covered loss). Given that Allstate paid Bloomgarden the limit of liability under the Policy—the ACV of his vehicle—Bloomgarden lacks standing. *See A&M Gerber Chiropractic LLC v. GEICO Gen. Ins.*

*Co.*, 925 F.3d 1205, 1212-13 (11th Cir. 2019) ("When an insurance company has paid all benefits in full there is no case or controversy.") (internal quotations omitted).

Further, nothing in the Policy expands coverage to include salvage value in addition to ACV. Here, this Court cannot compensate Bloomgarden because he was not harmed in the first place. *See Muransky*, 2020 WL 6305084, at *4. He received the benefit of his bargain—ACV for the total loss of his vehicle. He now seeks a windfall recovery in the form of salvage value in addition to ACV. But in order to provide such relief, the Court would have to reword the plain language of the Policy to create a concrete harm sufficient to confer standing. Courts have repeatedly dismissed such "gotcha" insurance claims that do not implicate actual, real-world harm to the insured. *See, e.g., Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 538 (3d Cir. 1994) (dismissing insured's claim for lack of standing where she "has not alleged or established that she suffered any actual or threatened injury from Travelers' denial of her claim for no-fault benefits for she acknowledges that Medicare paid the medical expenses for which she seeks a recovery" and describing claim as an assertion that "Travelers wronged, but did not injure her"); *Williams v. Blue Cross & Blue Shield of Fla.., Inc.*, No. 09-CV-225, 2010 WL 4025857, at *3 (N.D. Fla. Oct. 12, 2010) (dismissing action against insurer for lack of standing where "none of the named plaintiffs suffered any injury as a result of the acts alleged in their Complaint" because insured paid no out-of-pocket costs for medical procedures at issue).

Bloomgarden did not suffer a "concrete and particularized" injury as a result of Allstate's conduct. Quite the reverse; he was made whole under the Policy when Allstate paid him ACV for his vehicle. This is not a case where the insurer paid less on a claim than the insured contends he is owed. *See, e.g., Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1306-07 (11th Cir. 2008) (finding insured had standing to sue for damages where insured maintained he was paid less on his claim than what was owed under the policy); *Randy Rosenberg, D.C., P.A. v. Geico Gen. Ins. Co.*, No.

19-CV-61422, 2019 WL 3886160, at *4 (S.D. Fla. Aug. 19, 2019) (finding plaintiff had standing to sue under automobile insurance policy because plaintiff sought monetary damages resulting from defendant allegedly paying less on certain insurance claims than plaintiff claimed it was owed). Nor does this case involve a denial of coverage. *See, e.g., Bastian v. United Servs. Auto Ass'n*, 150 F. Supp. 3d 1284, 1287 (M.D. Fla. 2015) (seeking to recover certain taxes and fees that the insured purportedly incurred in connection with her total loss). Instead, Bloomgarden is seeking monetary damages ***above and beyond the limits of liability*** contained in the Policy. Thus, this matter is akin to cases where insurance benefits are fully exhausted—and there is no case or controversy because no money is owed regardless of how the case is ultimately decided. *See Gerber*, 925 F.3d at 1212-13; *Harrison v. United Mine Workers of Am. 1974 Ben. Plan & Trust*, 941 F.2d 1190, 1193 (11th Cir. 1991).

Notably, despite urging the Court to follow Judge Dimitrouleas' analysis by filing the *Morgan* Order as supplemental authority, Allstate asks the undersigned to adopt the *Morgan* Order's policy interpretation and sidestep standing as a threshold issue. *See* Notice of Supplemental Authority [ECF No. 108]. Specifically, Allstate argues that this Court should not confine its analysis to determining whether a case or controversy exists—but proceed with addressing the merits of Bloomgarden's claim in conjunction with its standing analysis. Response at 7-8. However, the Eleventh Circuit has categorically rejected this approach:

> Because standing to sue implicates jurisdiction, a court *must* satisfy itself that the plaintiff has standing *before* proceeding to consider the merits of [a party's] claim, no matter how weighty or interesting. Indeed, the Supreme Court has expressly condemned the exercise of a so-called "hypothetical jurisdiction" that enables a court to resolve contested questions of law when its jurisdiction is in doubt. "Hypothetical jurisdiction" . . . produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion.

*Gardner v. Mutz*, 962 F.3d 1329, 1339 (11th Cir. 2020) (internal citations and quotations omitted) (emphasis in original and added).

Here, there is no "overlap" between the merits of Bloomgarden's breach of contract claim and his standing to sue that would permit the Court to further address the merits of his claim. *See Steel Co.*, 523 U.S. at 97 n.2 (distinguishing statutory-standing cases, where merits and jurisdictional inquires may "overlap," from Article-III-standing cases). On the contrary, the issue here is whether Bloomgarden has "satisfied the irreducible constitutional minimum standing requirements that emerge from Article III." *Gardner*, 962 F.3d at 1340. Thus, because the standing issue is "independent and dispositive," it must be "decided first," and the Court must decline Allstate's invitation to engage in contractual interpretation. *See Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1271 (11th Cir. 2015) (the constitutional standing doctrine "implicates [a court's] subject matter jurisdiction, and accordingly must be addressed as a threshold matter.").

Given that this suit does not satisfy Article III's case-or-controversy requirement, the Court is left with only one option: remand the matter to the state court whence it came.[4] *See Esteves v. SunTrust Banks, Inc.*, 615 F. App'x 632, 637 (11th Cir. 2015) ("Consequently, once the district court concluded that [plaintiff's] amended complaint did not present a justiciable controversy, the court should have remanded the matter to the state court from which it was removed instead of

---

[4] To be clear, the Court's decision to remand this matter for lack of standing does not prevent the state court from exercising jurisdiction over this case. State legislatures are not bound by the standing requirements imposed by Article III on federal courts. In other words, as the Supreme Court has explained:

> "[T]he constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law . . . ."

*ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) (citations omitted). Thus, the state court is fully entitled to entertain a dispute, such as this one, notwithstanding this Court's finding that it does not qualify as a case or controversy under Article III.

dismissing the action with prejudice.") (citations omitted); *Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 881 (11th Cir. 2016) ("[T]he court should have remanded the matter to the state court from which it was removed instead of dismissing the action with prejudice."); *see also Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) ("[T]he literal words of § 1447(c) . . . give . . . no discretion to dismiss rather than remand an action [that has been removed from state court].").[5]

## CONCLUSION

It is a federal court's responsibility to "zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). In fact, "[a] federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (citations omitted). Here, Plaintiff, recognizing the absence of the "irreducible constitutional minimum" required to confer standing, *Lujan*, 504 U.S. at 560-561, alerted this Court that subject matter jurisdiction is lacking. Consequently, remand of this action is warranted. Thus, for the reasons set forth herein, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Remand [ECF No. 109] is **GRANTED**.

2. This case is hereby **REMANDED** to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County.

---

[5] Additionally, "[i]t is well-settled that if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *Gerber*, 925 F.3d at 1211 (internal quotations and citation omitted); *see also Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000) (class representative must have individual standing to raise class claims).

3. The Clerk of Court is directed to **CLOSE** this case and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of October, 2020.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record